**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ELIAS ABI YOUNES, <u>et al.</u>, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Civil Action No. 21-544 (RBW) |
| | ) |
| | ) |
| UNITED STATES | ) |
| DEPARTMENT OF STATE, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## <u>MEMORANDUM OPINION</u>

The plaintiffs, Elias Abi Younes and Nicole Bardawil, bring this civil action against the

defendants, the United States Department of State, United States Secretary of State Marco Rubio,

and Senior Bureau Official in the Bureau of Consular Affairs John Armstrong,[1] alleging that the

defendants violated the plaintiffs' rights under the Immigration and Nationality Act (the "INA"),

the Administrative Procedure Act (the "APA"), the Fifth Amendment to the United States

Constitution, the Mandamus Act, and the Declaratory Judgment Act, when they cancelled the

plaintiffs' visas and denied their visa reapplications.  <u>See</u> Complaint for Declaratory and

Mandamus Relief ("Compl.") ¶¶ 1–4, 106–22, ECF No. 1.  Currently pending before the Court

are the defendants' converted motion for summary judgment, <u>see</u> Defendants' Second Motion to

Dismiss ("Defs.' Mot."), ECF No. 29,[2] and the plaintiffs' motion for summary declaratory

judgment, <u>see</u> Memorandum of Points and Authorities in Support of Plaintiffs' Motion for

---

[1] Marco Rubio is the current United States Secretary of State and John Armstrong is the current Senior Bureau Official in the Bureau of Consular Affairs, and, therefore, they are automatically substituted for their predecessors Antony Blinken and Rena Bitter, respectively, pursuant to Federal Rule of Civil Procedure 25(d).

[2] At a motion hearing on November 2, 2022, the Court converted the defendants' second motion to dismiss to a motion for summary judgment.  <u>See</u> Order at 1 (Nov. 3, 2022), ECF No. 32.

Summary Declaratory Judgment and Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Pls.' Mot.") at 1, ECF No. 44.  Upon careful consideration of the parties' submissions,[3] the Court concludes for the following reasons that it must grant the defendants' motion for summary judgment and deny the plaintiffs' motion for summary declaratory judgment.

## I.    BACKGROUND

### A.    Statutory Background

The INA regulates the admissibility of noncitizens to the United States, including their eligibility for visas.  See 8 U.S.C. § 1182.  Noncitizens "who are inadmissible under [§ 1182(a) of the INA] are ineligible to receive visas and ineligible to be admitted to the United States[.]" 8 U.S.C. § 1182(a).  The decision to grant or deny a visa application rests with the consular officer adjudicating that particular application.  See id. § 1201(a)(1).  Department of State regulations provide that "the consular officer must issue the visa[] [or] refuse the visa under [8 U.S.C. § 1182(a)] or [8 U.S.C. § 1201(g)] or other applicable law[.]"  22 C.F.R. § 42.81(a). Further, under the INA,

> if an alien's application for a visa . . . is denied by an immigration or consular officer because the officer determines the alien to be inadmissible under [8 U.S.C. § 1182(a)], the officer shall provide the alien with a timely notice that[] (A) states th[at] determination, and (B) lists the specific provision or provisions under which the alien is inadmissible[.]

---

[3] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendants' Answer to Plaintiffs' Complaint for Declaratory and Mandamus Relief ("Defs.' Answer"), ECF No. 27; (2) the Defendants' Statement of Points and Authorities in Support of Defendants' Second Motion to Dismiss ("Defs.' Mem."), ECF No. 29; (3) the Plaintiffs' Statement of Undisputed Material Facts ("Pls.' Facts"), ECF No. 44; (4) the Defendants' Combined Reply Memorandum in Support of Their Converted Motion for Summary Judgment and Opposition to Plaintiff[s'] Motion for Summary Declaratory Relief ("Defs.' Reply"), ECF No. 45; (5) the Defendants' Statement of Undisputed Material Facts ("Defs.' Facts"), ECF No. 45; (6) the plaintiffs' Reply in Support of Plaintiffs' Motion for Summary Declaratory Judgment ("Pls.' Reply"), ECF No. 47; (7) the defendants' first Notice of Supplemental Authority, ECF No. 48; (8) the defendants' second Notice of Supplemental Authority, ECF No. 49; and (9) the plaintiffs' Notice of Supplemental Authority, ECF No. 51.

8 U.S.C. § 1182(b)(1).

If, however, the applicant is ineligible for a visa based on "[s]ecurity and related grounds"—which include "terrorist activity" under § 1182(a)(3)—then the statutory written-notice requirement "does not apply[.]"  See 8 U.S.C. § 1182(b)(3) ("Paragraph (1) [of § 1182(b)] does not apply to any alien inadmissible under paragraph (2) or (3) of [§ 1182(a)].").  Specifically, a noncitizen is inadmissible under 8 U.S.C. § 1182(a)(3)(B) if he or she, inter alia, "has engaged in a terrorist activity[.]"  Id. § 1182(a)(3)(B)(i)(I).  The term "engage in terrorist activity" means, in the capacity as an individual or as a member of an organization:

(I)     to commit or to incite to commit, under circumstances indicating an intention to cause death or serious bodily injury, a terrorist activity;
(II)    to prepare or plan a terrorist activity;
(III)   to gather information on potential targets for terrorist activity;
(IV)    to solicit funds or other things of value for
        (aa) a terrorist activity;
        (bb) a terrorist organization described in clause (vi)(I) or (vi)(II); or
        (cc) a terrorist organization described in clause (vi)(III), unless the solicitor can demonstrate by clear and convincing evidence that he [or she] did not know, and should not reasonably have known, that the organization was a terrorist organization;
(V)     to solicit any individual—
        (aa) to engage in conduct otherwise described in this subsection;
        (bb) for membership in a terrorist organization described in clause (vi)(I) or (vi)(II); or
        (cc) for membership in a terrorist organization described in clause (vi)(III) unless the solicitor can demonstrate by clear and convincing evidence that he [or she] did not know, and should not reasonably have known, that the organization was a terrorist organization; or
(VI)    to commit an act that the actor knows, or reasonably should know, affords material support, including a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training—
        (aa) for the commission of a terrorist activity;
        (bb) to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity;
        (cc) to a terrorist organization described in subclause (I) or (II) of clause (vi) or to any member of such an organization; or

> (dd) to a terrorist organization described in clause (vi)(III), or to any member of such an organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and should not reasonably have known, that the organization was a terrorist organization.

Id. § 1182(a)(3)(B)(iv)(I)–(VI).

Terrorist organizations described in 8 U.S.C. § 1182(a)(3)(B)(vi) are known as Tier I, Tier II, and Tier III terrorist organizations.  The government designates organizations as Tier I and Tier II terrorist organizations in the text of the INA itself or by publication in the Federal Register.  See 8 U.S.C. § 1182(a)(3)(B)(vi)(I), (II).  Tier III organizations are those that consist of "a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in," terrorist activities.  Id. § 1182(a)(3)(B)(vi)(III).

## B.    Factual Background

The plaintiffs, Elias Abi Younes and Nicole Bardawil, are citizens of Lebanon, see Pls.' Facts ¶ 1; Defs.' Facts ¶¶ 1–2, and, "[o]n April 7, 2015, [they] were each issued a B1/B2 nonimmigrant visa valid until April 5, 2020[,]" Pls.' Facts ¶ 2; see Defs.' Facts ¶ 3. Subsequently, in December 2018, the Department "revoked [the p]laintiffs' B1/B2 nonimmigrant visas."  Pls.' Facts ¶ 3; see Defs.' Facts ¶ 4.  "On May 21, 2019, [the p]laintiffs appeared at the U.S. Embassy in Beirut, Lebanon, for a nonimmigrant visa appointment before a consular officer."  Pls.' Facts ¶ 4; see Defs.' Facts ¶ 5.  Following their interview with the consular officer, the "[p]laintiffs' visas were placed into administrative processing under section 221(g) of the [INA,]" Pls.' Facts ¶ 5; see Defs.' Facts ¶ 5, which the plaintiffs allege was "due at least in part to the prior revocation[ of their B1/B2 nonimmigrant visas,]" Pls.' Facts ¶ 5.

On October 19, 2020, the "[d]efendants refused [the p]laintiffs' visas under section 212(a)(3)(B) of the INA and informed [the p]laintiffs of the refusal via email[.]"  Id. ¶ 7; see

Defs.' Facts ¶ 6.  The plaintiffs state that this notice via email "cit[ed] only INA section

212(a)(3)(B), general terrorism grounds of inadmissibility[,]" Pls.' Facts ¶ 7, and that the State

Department's Consular Consolidated Database (the "CCD")—which acts as a repository for

records relating to immigrant and nonimmigrant visas—"indicates only that [the p]laintiffs were

refused a visa under INA [section] 212(a)(3)(B) without listing any additional or more specific

subsection thereof[,]" id. ¶ 8 (citing Defendant's Motion for a Protective Order, Exhibit ("Ex.")

A (Requests for Admission ("Defs.' Resps.") at 3, ECF No. 38-1).  The plaintiffs state that "as of

October 19, 2020—the date of [their] visa denials—the CCD did not contain information

sufficient to determine whether [the p]laintiffs' alleged material support for terrorism related to a

'Tier III' terrorist organization or instead to a 'Tier I' or 'Tier II' organization."  Id. ¶ 11 (citing

Defs.' Resps. at 3–4).

## C.    Procedural Background

### 1.    The Defendants' First Motion to Dismiss

The plaintiffs filed their original Complaint in this case on March 2, 2021, see Compl.

at 1, arguing that the denial of their visa reapplications was unlawful because the defendants

were "required to confront [the p]laintiffs with [their] belief that [the p]laintiffs had knowingly

provided material support to a 'Tier III' terrorist organization[,]" id. ¶ 3, which the plaintiffs

contend is "the only conceivable ground under [§ (a)(3)(B)] for which [the d]efendants could

have found [the p]laintiffs inadmissible[,]" id.  In response, on May 7, 2021, the defendants filed

a motion to dismiss the plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6), see Motion to Dismiss at 1, ECF No. 14, arguing that, under the doctrine

of consular nonreviewability, "the Court lacks jurisdiction to consider requests for review of

consular visa decisions," and that "[the d]efendants are not required to provide [the p]laintiffs

with any further explanation for their visa refusals[,]" Statement of Points and Authorities in

Support of Defendants' Motion to Dismiss at 1, ECF No. 14.  On March 3, 2022, the Court held

a hearing on the motion, <u>see</u> Minute ("Min.") Entry (Mar. 3, 2022), during which the defendants

raised a standing argument that was not explicitly raised in their written motion to dismiss, and,

thus, the Court continued the hearing and ordered supplemental briefing on (1) the defendants'

new standing argument and (2) whether 18 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd) requires the

government to advise visa applicants of the basis for visa denial under § 1182(a)(3)(B), based on

the statutory language which appears to require that individuals denied on Tier III terrorist

activity grounds be afforded the opportunity to rebut the stated reason for the denial, <u>see</u> Order

at 1 (Mar. 4, 2022), ECF No. 18.  And, on April 22, 2022, the parties appeared before the Court

for the continuation of the hearing, during which the Court denied the defendants' motion to

dismiss, after concluding that the plaintiffs had plausibly alleged that they were denied on the

basis of Tier III terrorist activity without being provided adequate notice and a chance to rebut

those allegations, as required by 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd).[4]  <u>See</u> Order at 1 (Apr. 22,

2022), ECF No. 22.

     Subsequently, on May 31, 2022, over a year after the plaintiffs filed their Complaint in

this case, "a consular officer contacted [the p]laintiffs at their email addresses and advised that

their October 19, 2020 tourist visa refusals were not based on 8 U.S.C.

---

[4] The defendants' second motion to dismiss states that, at the April 22, 2022 motion hearing, "[t]his Court [ ] denied [the d]efendants' [first] motion to dismiss as to [the p]laintiffs' first, second, fourth, and fifth causes of action." Defs.' Mem. at 8 (citing Hr'g Transcript at 8, 23 (Apr. 22, 2022)).  As to the third cause of action, the defendants state that "this Court opined that [the p]laintiffs appeared to lack standing to assert any constitutional claims, including those asserted in [the p]laintiffs' third cause of action[—<u>i.e.</u>, the alleged violation of the Fifth Amendment to the United States Constitution—], and [the p]laintiffs admitted that they were 'not seeking to advance here the constitutional claims.'" <u>Id.</u> at 7 (citing Hr'g Transcript at 4 (Apr. 22, 2022)).  However, the Order memorializing the Court's oral rulings at the April 22, 2022 motion hearing ordered that "the defendants' Motion to Dismiss, ECF No. 14, is denied[]" in its entirety, without referencing the specific causes of action.  Order at 1 (Apr. 22, 2022), ECF No. 22.  In any event, because—consistent with their prior representations to the Court—the plaintiffs have not advanced any additional argument in support of their constitutional claims or sought relief for those claims, the Court deems this cause of action to have been abandoned.  <u>See</u> <u>Pub. Emps. for Env't Resp. v. Beaudreau</u>, 25 F. Supp. 3d 67, 129 (D.D.C. 2014) (concluding the same).

§ 1182(a)(3)(B)(iv)(VI)(dd) because the refusals were not based on a finding involving a Tier III

organization described at 8 U.S.C. § 1182(a)(3)(B)(vi)(III)." Pls.' Facts ¶ 14; see Defs.' Facts

¶ 7. The plaintiffs state that this email also "stated that [they] could reapply for visas in the

future, which [the p]laintiffs are free to do at any time."[5]  Pls.' Facts ¶ 18 (internal citation

omitted). And, on June 13, 2022, the defendants filed their answer to the Complaint. See

Answer at 1, ECF No. 27.

### 2. The Defendants' Second Motion to Dismiss and Motion for a Protective Order

On July 6, 2022, the defendants filed their second motion to dismiss. See Defs.' Mot.

at 1. In this motion, the defendants argue that the Court should "dismiss the remaining causes of

action in [the p]laintiffs' Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon

which relief can be granted[]" for two reasons: (1) "[t]he doctrine of consular non[]reviewability

precludes this Court's review of the government's refusal of visitor visas to [the p]laintiffs[;]"

and (2) "the [p]laintiffs cannot show that the notice provided was inadequate or that there is a

clear duty to act." Defs.' Mem. at 9. In support of their argument, the defendants attached as an

exhibit to their motion a declaration from Ellen B. Eiseman, "an attorney adviser in the Office of

the Legal Adviser[]" for the U.S. Department of State, Defs.' Mot., Ex. A (Declaration of Ellen

B. Eiseman) ("Eiseman Decl.") at ¶ 1, ECF No. 29-1, and copies of the emails sent to the

plaintiffs on May 31, 2022, informing them that their denials were not based on Tier III terrorist

activity, see id., Ex. A (the "May 31 Emails") at 5–6.

On November 2, 2022, the Court held a hearing on the defendants' second motion to

dismiss, see Min. Entry (Nov. 2, 2022), during which it converted the defendants' second motion

---

[5] The plaintiffs state that between October 19, 2020, and May 31, 2022, the defendants "did not determine . . . to refuse [the p]laintiffs' request for a visa based on a more specific statutory basis under INA [§] 212(a)(3)(b)[,]" Pls.' Facts ¶ 9 (citing Defs.' Resps. at 3), nor did they "conduct a further investigation or analysis . . . to determine which terrorist organization(s) were the basis for [the defendants'] October 19, 2020, refusal[]" of the plaintiffs' visa request, Pls.' Facts ¶ 10 (citing Defs.' Resps. at 4).

to dismiss into a motion for summary judgment, based on the defendants' request that the Court consider the Eiseman Declaration and the May 31 Emails.  See Order at 1 (Nov. 3, 2022), ECF No. 32.  Additionally, based upon the plaintiffs' request for limited discovery before the Court's ruling on the defendants' converted motion for summary judgment, the Court ordered the submission of written discovery requests and responses and/or objections to those requests.  Id.

On January 5, 2023, following a discovery dispute between the parties regarding those requests, the Court granted the defendants' motion for a protective order and ordered the parties to submit additional briefing on defendants' converted motion for summary judgment.  See Order at 1 (Jan. 9, 2023), ECF No. 42.[6]  In response to the Court's order, on January 20, 2023, the plaintiffs filed their combined opposition to the defendants' converted motion for summary judgment and their motion for summary declaratory judgment.  See Pls.' Mot. at 1.  On February 9, 2023, the defendants filed their combined opposition to the plaintiffs' motion for summary declaratory judgment and reply in support of their converted motion for summary judgment, see Defs.' Reply at 1, and on February 23, 2023, the plaintiffs filed their reply in support of their motion for summary declaratory judgment, see Pls.' Reply at 1.

## II.    STANDARD OF REVIEW

### A.    Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56

A court may grant a Rule 56 motion for summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a

---

[6] In light of the need for additional briefing on the defendants' converted motion, the Court denied the motion without prejudice pending submission of the parties' additional briefing, id. at 2, noting that the motion "will automatically be reinstated" upon completion of that briefing, id. at 2 n.1.  As the predicate for issuing the Memorandum Opinion and Order, the Court has reinstated that motion.

reasonable jury could return a verdict for the nonmoving party.'" Steele v. Schafer, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment[.]" Id. The movant has the burden of demonstrating the absence of a genuine issue of material fact and that the non-moving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Accordingly, unsupported allegations or conclusory statements are not sufficient to defeat summary judgment, see Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp., 564 F.3d 462, 465–66 (D.C. Cir. 2009); Exxon Corp. v. Fed. Trade Comm'n, 663 F.2d 120, 126 (D.C. Cir. 1980) (noting that "[i]t is well settled that [c]onclusory allegations unsupported by factual data will not create a triable issue of fact." (citations and internal quotation marks omitted) (second alteration in original)). And the non-moving party "must set forth specific facts showing that there [are] genuine issue[s] for trial." Anderson, 477 U.S. at 256. Therefore, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party]'s position [is] insufficient[]" to withstand a summary judgment motion; rather, "there must be [some] evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

When a non-moving party supports their position via affidavit or declaration, "[it] must set forth . . . specific facts[,]" Ass'n of Flight Attendants-CWA, 564 F.3d at 465 (internal quotation marks omitted), pursuant to Rule 56(e), "that is, it 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated,'" id. (quoting Fed. R. Civ. P. 56(e)(1)). "Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule." Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999); see also Dist. Intown Props. Ltd. P'ship v. District of Columbia, 198 F.3d 874, 878 (D.C. Cir. 1999) ("[T]he court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." (emphasis added)). Therefore, the party opposing summary judgment "must support [their] allegations . . . with facts in the record; a mere unsubstantiated allegation . . . creates no genuine issue of fact and will not withstand summary judgment[.]" Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993) (citation and internal quotation marks omitted).

## B.    Declaratory Judgment

Pursuant to the Declaratory Judgment Act (the "Act"), "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]he Declaratory Judgment Act 'is not an independent source of federal jurisdiction[,]" C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth., 310 F.3d 197, 201 (D.C. Cir. 2002) (quoting Schilling v. Rogers, 363 U.S. 666, 677 (1960)), and thus "the availability of [declaratory] relief presupposes the existence of a judicially remediable

right[,]" id. (quoting Schilling, 363 U.S. at 677).  Because the Act does not provide an

independent basis for jurisdiction or a distinct cause of action, "just like suits for every other type

of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy

requirement." California v. Texas, 593 U.S. 659, 672 (2021) (citing MedImmune, Inc. v.

Genentech, Inc., 549 U.S. 118, 126–27 (2007)).  As the Supreme Court has noted, in order to

satisfy Article III, a dispute in this context must be "definite and concrete, touching the legal

relations of parties having adverse legal interests[,]" and it must also be "'real and substantial'

and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from

an opinion advising what the law would be upon a hypothetical state of facts.'" MedImmune,

549 U.S. at 127 (quoting Aetna Life Ins. v. Haworth, 300 U.S. 227, 240–41 (1937)).

To constitute a live controversy, the dispute must be "of sufficient immediacy and reality

to warrant the issuance of a declaratory judgment." Preiser v. Newkirk, 422 U.S. 395, 402

(1975) (emphasis omitted) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273

(1941)).  "Typically, a declaratory judgment claim based on the occurrence of a future or

contingent event is not sufficiently immediate or real to be justiciable." C.F. Folks, Ltd. v. DC

Jefferson Bldg., LLC, 308 F. Supp. 3d 145, 150 (D.D.C. 2018) (citing Nat'l R.R. Passenger

Corp. v. Consol. Rail Corp., 670 F. Supp. 424, 429 (D.D.C. 1987)).  "However, if there is a

'practical likelihood' that the future or contingent event will occur, a declaratory judgment claim

may nonetheless present a justiciable controversy." Id. (quoting Bazarian Int'l Fin. Assocs.

L.L.C. v. Desarollos Aerohotelco, C.A., 793 F. Supp. 2d 124, 129 (D.D.C. 2011)).

"[I]t is well settled that a declaratory judgment always rests within the sound discretion of

the court." President v. Vance, 627 F.2d 353, 365 n.76 (D.C. Cir. 1980) (citing Brillhart v.

Excess Ins. of Am., 316 U.S. 491, 494 (1942)).  While there are no dispositive factors in

determining whether to grant declaratory relief, such relief will "ordinarily be granted only when it will either 'serve a useful purpose in clarifying the legal relations in issue' or 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" Id. (quoting E. Borchard, Declaratory Judgments 299 (2d ed. 1941)).

### III.    ANALYSIS

The defendants argue that they are entitled to summary judgment on the plaintiffs' remaining first, second, fourth, and fifth causes of action because they have provided the statutory notice required by law, which they argue is no notice at all in light of the "conclusive evidence" that they have provided establishing that the denial of the plaintiffs' visa requests was based on Tier I or Tier II terrorist-related grounds. See Defs.' Reply at 5. The defendants also argue that the Court should deny the plaintiffs' motion for summary declaratory relief for those same reasons. See id.

Although the plaintiffs have previously conceded that their claims would fail if they were deemed inadmissible based on Tier I or Tier II terrorist-related grounds, and despite the fact that the defendants have now offered what they argue to be "conclusive evidence" that this was in fact the case, the plaintiffs make several arguments as to why the defendants are not entitled to summary judgment. Specifically, the plaintiffs argue that the defendants' proffered evidence does not establish "whether the consular officer who denied [their] visas on October 19, 2020 agreed with or was even aware of the specific basis for the terrorism denials here," as required by law, or rather whether the denial was a "post hoc rationalization[] by other State Department personnel[,]" Pls.' Mot. at 1, and that given this purported "dearth of facts[ regarding the grounds for their denial,]" id., the Court cannot resolve the remaining factual disputes in this case, see id.

The plaintiffs propose an alternative path for resolving this case. Specifically, they request that the Court grant them summary declaratory relief by issuing an order declaring that (1) "at any future consular interview, the consular officer must accept and consider any written material proffered by [the p]laintiffs in support of their new visa applications and then make a finding regarding whether [the p]laintiffs provided material support to a Tier III organization[,]" id. at 2; and (2) "if [the d]efendants believe that [the p]laintiffs provided material support to a Tier III organization, [the d]efendants must provide [the p]laintiffs notice and an opportunity to address that finding before [the d]efendants can deny [the p]laintiffs' request[,] id. at 2. Doing so, the plaintiffs contend, will resolve the remaining issues in this case "without any need for the Court to resolve the impossible set of questions that the [p]arties have presented here." Id.

The Court will address the defendants' converted motion for summary judgment first, before addressing the plaintiffs' motion for summary declaratory judgment.

## A.    The Defendants' Motion for Summary Judgment

In their converted motion for summary judgment, the defendants argue that they "have provided [the p]laintiffs and this Court with conclusive evidence in the form of government records demonstrating that [the p]laintiffs' October 19, 2020 tourist visa denials were based on either Tier I or Tier II terrorist-related grounds[,]" Defs.' Reply at 5, and have "provided [the p]laintiffs with sufficient notice of the statutory basis for the refusals by citing 8 U.S.C. § 1182(a)(3)(B) as grounds for refusal[]" and subsequently informing the plaintiffs that their denials were based on either Tier I or Tier II terrorist-related activities under that section, id. Therefore, the defendants argue that "no material facts remain in dispute[]" regarding their compliance with the APA and INA. Id. And, as indicated previously, in support of their position, the defendants have submitted the Eiseman Declaration and the May 31 Emails. See generally Defs.' Mot., Ex. A (Eiseman Decl.); id., Ex. A (May 31 Emails).

The plaintiffs respond that the "[d]efendants have not put forth indisputable evidence that [the p]laintiffs were found inadmissible for conduct other than Tier III material support, and both the unsworn email, the lack of sworn statements confirming the email's veracity, and [the d]efendants' subsequent discovery undermine" their position. Pls.' Mot. at 16 (emphasis omitted). The plaintiffs argue that "[b]ecause a reasonable fact finder could deduce from the evidence presented that the adjudicating consular office made no specific finding regarding [the p]laintiffs' 'terrorist activity[,'] or that [the p]laintiffs could only have been found inadmissible due to Tier III material support," the defendants are not entitled to summary judgment. Id. at 17.

The Court will first revisit the limits imposed by the doctrine of consular nonreviewability on the Court's review of the defendants' denial of the plaintiffs' visa reapplications. Next, the Court will assess whether the defendants are entitled to summary judgment based on their proffered evidence indicating that their denial of the plaintiffs' request was not based on Tier III material support, and therefore no notice was required under the statute. Finally, the Court will determine whether the plaintiffs are entitled to any of their requested declaratory relief.

### 1. Whether the Doctrine of Consular Nonreviewability Bars the Court from Reviewing the Denial of the Plaintiffs' Visa Reapplications

The doctrine of consular nonreviewability "recognizes that Congress has empowered consular officers with the exclusive authority to review a proper application for a visa when made overseas." Carter v. U.S. Dep't of Homeland Sec., No. 21-cv-422 (RCL), 2021 WL 6062655, at *3 (D.D.C. Dec. 22, 2021) (citing 8 U.S.C. §§ 1104(a), 1201(a), 1201(g)). "[I]n view of the political nature of visa determinations and of the lack of any statute expressly authorizing judicial review of consular officers' actions, courts have applied what has become

known as the doctrine of consular nonreviewability." Pietersen v. U.S. Dep't of State, 138 F. 4th

552, 556 (D.C. Cir. 2025) (quoting Saavedra Bruno v. Albright, 197 F.3d 1153, 1159 (D.C. Cir.

1999)). "That doctrine 'shields a consular official's decision to issue or withhold a visa from

judicial review.'" Id. (quoting Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir.

2021)); see Saavedra Bruno, 197 F.3d at 1159 ("The doctrine holds that a consular official's

decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says

otherwise."). However, "the doctrine of consular nonreviewability is non-jurisdictional[,]" Baan

Rao Thai Rest., 985 F.3d at 1028 (citation omitted), because it "goes to [the Court's] willingness,

not [its] power, to hear these cases[,]" id. at 1029 (citing Allen v. Milas, 896 F.3d 1094, 1101

(9th Cir. 2018)).

"[C]ourts have held that claims otherwise barred by the consular nonreviewability

doctrine are subject to judicial review in two narrow circumstances[:]" (1) when "an American

citizen [ ] challenge[s] the exclusion of a noncitizen [on the basis that] it burdens the citizen's

constitutional rights[,]" and (2) when Congress "expressly authoriz[es] judicial review of

consular officers' actions." Id. at 1024–25 (internal citations and quotation marks omitted).

In denying the defendants' first motion to dismiss, the Court concluded that the first

exception to the doctrine of consular nonreviewability did not apply because although the

plaintiffs "have traveled to the United States on B1/B2 visas without issue[]" "for approximately

[twenty] years[,]" Compl. ¶ 43, they are not United States citizens, see id. ¶ 5. However, the

Court concluded that with respect to the second exception to the doctrine of consular

nonreviewability, the plaintiffs had plausibly alleged a basis to challenge the consular officer's

processing of their visa reapplications under the Act.[7]  See Order at 1 n.1 (Apr. 22, 2022).

As the basis for this conclusion, the Court explained that 8 U.S.C.

§ 1182(a)(3)(B)(iv)(VI)(dd)

> must be interpreted such that a visa applicant, if deemed inadmissible under
> § 1182 due to purported material support for a "terrorist organization described in
> clause (vi)(III) [(a "Tier III organization")], or any member of such
> organization[,]" is provided with an opportunity to "demonstrate by clear and
> convincing evidence that the [applicant] did not know, and should not reasonably
> have known, that the organization was a terrorist organization."  8 U.S.C.
> § 1182(a)(3)(B)(iv)(VI)(dd).  In other words, "[t]h[is ]clause, properly construed,
> require[s] the consular officer to confront [the applicants] with the claim that
> [they] knew that [their actions] . . . constituted material support to a terrorist
> organization . . . , and then afford [them] the opportunity to negate such
> knowledge." Am. Acad. of Religion v. Napolitano, 573 F.3d 115, 132 (2d Cir.
> 2009) (explaining that "for [an applicant] to have a meaningful opportunity to
> negate knowledge, he had to be confronted with the claim that he" provided
> support to a terrorist organization as outlined in the statute).

Order at 1 (Apr. 22, 2022), ECF No. 22.  However, the plaintiffs have conceded that "if their

alleged ties are to a Tier I or Tier II organization, the [§ 1182](a)(3)(B) notice provided to them

suffices."  Plaintiffs' Response to Defendants' Motion to Dismiss at 22, ECF No. 16 (emphasis

omitted); see Plaintiffs' Response to Defendants' Supplemental Brief in Support of Defendants'

Motion to Dismiss at 13, ECF No. 20 (emphasizing that the "[p]laintiffs readily agree that where

Tier I or Tier II organizations are concerned, the notice [they] received would suffice").

Now, the defendants move for summary judgment arguing that the Eiseman Declaration

and the May 31 Emails conclusively establish that the plaintiffs' visas were denied based on

---

[7] Although the defendants relied on, and continue to rely on, Kerry v. Din, 576 U.S. 86, 104 (2015), the Supreme
Court in that case did not rule on whether a consular officer is required by Congress to provide notice and an
opportunity to rebut the consular officer's determination of inadmissibility when the basis for inadmissibility is
material support for a Tier III organization.  See generally id.  Therefore, the Court concluded that Din did not
foreclose the plaintiffs' claims at that stage of this litigation.

either Tier I or Tier II terrorist-related grounds, and accordingly, they have provided all the statutory notice required under the circumstances, that is, none.  See Defs.' Reply at 5.

As indicated above, the plaintiffs do not dispute that failure to provide any notice suffices in the event that their denials were based on Tier I or Tier II organizations, but rather contend that (1) the Court may not rely on the Eiseman Declaration and the May 31 Emails because they are inadmissible at the summary judgment stage, see Pls.' Mot. at 21; (2) the wording of the May 31 Emails suggests that some other agency, not the consular officer, made the inadmissibility decision after the decision was actually made, see id. at 18; and (3) the defendants have not put forth indisputable evidence that the inadmissibility decision was based on either Tier I or Tier II organizations, even if the Court credits the Eiseman Declaration and May 31 Emails, see id. at 17.  The Court will address these arguments in turn.

The Court first addresses the May 31 Emails and the Eiseman Declaration.  According to her declaration, Ms. Eiseman, who is "an attorney adviser in the Office of the Legal Adviser" for the Department of State, is "authorized to search the [CCD] . . . for records of nonimmigrant and immigrant visas adjudicated at U.S. embassies and consulates overseas."  Defs.' Mot., Ex. A (Eiseman Decl.) ¶ 1.  According to the Eiseman Declaration, the CCD "reflects that on October 19, 2020, the consular officer refused the [plaintiffs'] visa applications under [8 U.S.C. § 1182](a)(3)(B) and sent [a] written notification of the refusals to the [plaintiffs] by email."  Id., Ex. A (Eiseman Decl.) ¶ 6.  And, according to the Eiseman Declaration, the CCD "further reflects that on May 31, 2022[,] the consular officer contacted each of the" plaintiffs, advising them "that their October 19, 2020 tourist visa refusals were not based on 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd) because the refusals were not based on a finding involving a Tier III organization . . ."  Id., Ex. A (Eiseman Decl.) ¶ 7; see id., Ex. A (May 31 Emails) at 5–6 ("Please

note that your refusal was not based on 8 U.S.C. [§] 1182(a)(3)(B)(iv)(VI)(dd) because it was not

based [on] a finding involving a Tier III organization described at [8 U.S.C.

§ 1182](a)(3)(B)(vi)(III).").

The plaintiffs argue that the Court may not "rely on either the May 31 Email[s] or the

ostensibly corroborating statements from the Eiseman Declaration at summary judgment,

because neither would be admissible as evidence."  Pls.' Mot. at 21 (citing Fed. R. Civ. P.

56(c)(2)) ("A party may object that the material cited to support or dispute a fact cannot be

presented in a form that would be admissible in evidence.").  However, at the summary judgment

stage, the Court need only inquire as to whether the evidence considered is "capable of being

converted into admissible evidence."  Greer v. Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007)

(quoting Gleklen v. Democratic Cong. Campaign Comm., 199 F.3d 1365, 1369 (D.C. Cir.

2000)).  As at least one other district court has concluded, information contained in the CCD that

is "kept in the regular course of business of the Department[] could be presented in an admissible

form at trial[,]" and therefore its consideration is permissible when ruling on a summary

judgment motion.  Khalili-Araghi v. Bitter, No. 23-cv-00696-LB, 2023 WL 5988590, at *4

(N.D. Cal. Sept. 13, 2023); see Sheikhalizadehjahed v. Gaudiosi, No. 2:24-cv-1136 SCR, 2024

WL 4505648, at *11 n.9 (E.D. Cal. Oct. 16, 2024) (declining to conclusively rule on

admissibility given the prematurity of summary judgment, but noting that "such standard

information from government databases likely falls within a hearsay exception[]" (citing Khalili-

Araghi, 2023 WL 5988590, at *4)).  Courts in this district have also regularly credited

declarations from attorney advisors at the Department of State based on information pulled from

the CCD.  See Aslam v. U.S. Dep't of Homeland Sec., No. 19-cv-2132 (ABJ), 2021 WL

1166927, at *2 n.5 (D.D.C. Mar. 26, 2021); Pourshakouri v. Pompeo, No. 20-cv-402 (RJL), 2021

WL 3552199, at *2 (D.D.C. Aug. 11, 2021); Moghaddam v. Pompeo, 424 F. Supp. 3d 104, 113

(D.D.C. 2020).  Because the information here—i.e., the May 31 Emails—are maintained in the

CCD in the regular course of business of the Department of State, the Court concludes that the

May 31 Emails and the Eiseman Declaration are "capable of being converted into admissible

evidence[,]" Greer, 505 F.3d at 1315 (quoting Gleklen, 199 F.3d at 1369), and the Court may

therefore rely on them in assessing the defendants' summary judgment motion.[8]

Having concluded that it may rely upon the May 31 Emails and the Eiseman Declaration,

the Court finds that the consular nonreviewability doctrine precludes judicial review in this case

because the plaintiffs were deemed inadmissible based on either Tier I or Tier II grounds, absent

some reason to find otherwise.  See Am. Acad. of Religion, 573 F.3d at 128–31 (distinguishing

between the statutory scheme regarding Tier III-related activities and those associated with Tier I

or Tier II organizations).

The plaintiffs offer two other arguments against entering summary judgment in favor of

the defendants, namely that (1) the wording of the May 31 Emails suggests that some other

agency, not the consular officer, made the inadmissibility decision after the plaintiffs were

---

[8] The plaintiffs argue that while "[t]he government would have this Court erroneously convert a presumption of the authenticity of the email in question here into a presumption as to its accuracy[,]" Pls.' Reply at 3, the Court "should not assume that the post hoc email sent here discloses the true basis for the denials in question when other indicia in the record contradict it[,]" id.  However, under the presumption of regularity, the Court must "presume that public officials have 'properly discharged their official duties[,]'" Bracy v. Gramley, 520 U.S. 899, 909 (1997) (citation omitted), absent "'clear evidence' that the official did not discharge his or her official duties properly,'" Nat'l Treasury Emps. Union v. Trump, ___ F. Supp. 3d ___, ___, No. 25-935 (PLF), 2025 WL 1218044, at *9 (D.D.C. Apr. 28, 2025) (quoting Owlfeather-Gorbey v. Avery, 119 F.4th 78, 86 (D.C. Cir. 2024)).  Although the plaintiffs argue that "[c]ourts have routinely refused to" assume the accuracy of government evidence, Pls.' Reply at 3, the case law they rely upon is inapposite because those cases involved the accuracy of intelligence reports based on raw intelligence, not, as here, the accuracy of an email disclosing the basis for an inadmissibility determination.  And, the only "evidence" the plaintiffs rely on in support of their position is the defendants' admissions related to the information contained in the CCD.  However, as the defendants indicated, the CCD is not the only source of information for inadmissibility decisions.  See Defs.' Resps. at 4 ("The Consular Consolidated Database contains the record of a consular officer's decision but may not contain all information considered in reaching the decision.").  Thus, without "clear evidence" that the consular officials have not discharged their duties properly in this case, the Court will credit the accuracy of the May 31 Emails.

informed of the denials of their visa reapplications on October 19, 2020, see Pls.' Mot. at 18; and (2) the defendants have not put forth indisputable evidence that the inadmissibility decision was based on either Tier I or Tier II organizations, even if the Court credits the Eiseman Declaration and May 31 Emails, see id. at 17.  However, these arguments are unpersuasive for several reasons.

As to this first additional argument, the plaintiffs contend that the wording of the May 31 Emails, combined with other purported practices in cases concerning suspected terrorist activity, create the inference that the inadmissibility decision was a post-hoc rationalization, not the decision of the consular officer.  In support of their position, the plaintiffs cite an amicus brief filed by former consular officers in Kerry v. Din, 576 U.S. 86 (2015), in which these former consular officers represent that "in cases where suspected terrorist activity i[s] concerned, consular officers can and often do deny visas based on" a generic inadmissibility label generated by databases or watchlists maintained by the Department of Homeland Security or other law enforcement or intelligence agencies, and thus, these decisions "frequently involve no consular discretion and are compelled by conclusory statements for which the underlying basis is unseen and unevaluated by a consular officer."  Pls.' Mot. at 19 (citing Br. of Former Consular Officers as Amici Curiae at 2–3, Kerry v. Din, 576 U.S. 86 (2015)).  Thus, according to the plaintiffs, the "[d]efendants['] sworn statements and admissions combined with the explanation of these former consular officers about how adjudications like [the p]laintiffs' are performed in practice leads to the logical inference" that the consular officer in this case based his or her general denial not on any specific findings, but instead on a determination by another agency pursuant to information not known to the consular officer. Pls.' Mot. at 19–20.  However, the plaintiffs' reliance on an amicus brief in an unrelated case, in the absence of affirmative evidence in the record in this case

that supports the position advanced in the amicus brief, does not create a logical inference that

the consular officer in their case denied their reapplications without knowledge of the basis for

those denials.  Thus, even assuming that the consular nonreviewability doctrine did not preclude

the Court's review of the consular determination in this case, the plaintiffs still have not

established more than "some metaphysical doubt" as to the inadmissibility determination based

on the conclusory statements on which they rely.  Matsushita Elec. Indus. Co., 475 U.S. at 586.

      Regarding their second alternative argument, the plaintiffs contend that the Eiseman

Declaration and May 31 Emails do not conclusively establish that the consular officer's

inadmissibility decision was based on either Tier I or Tier II organizations, rather than the

umbrella provision in § 1182(a)(3)(B) or some other sub-provision not involving material

support for a terrorist organization.  See Pls.' Mot. at 17.  In support of their position, the

plaintiffs rely on the defendants' representations that (1) the CCD records from October 19,

2020, only reference the inadmissibility determination under § 1182(a)(3)(B), "without listing

any additional or more specific subsection thereof[,]" id. (citation omitted); (2) as of that same

date, "there was nothing in the CCD that would allow a consular officer to determine whether the

inadmissibility determination was based on a finding of material support to either a Tier I, Tier

II, or Tier III organization[,]" id. at 18 (citation omitted); (3) "[a]t no time after October 19,

2020, did [the d]efendants conduct any investigation to discern whether the finding was based on

a Tier I, Tier II, or Tier III organization[,]" id. (citation omitted); and (4) "[a]t no time[ after

October 19, 2020,] did [the d]efendants determine to refuse [the p]laintiffs' request for a visa

based on a more specific statutory basis under [§ 1182](a)(3)(B)[,]" id. (citation omitted).

      However, in resolving the defendants' motion to dismiss, the Court concluded that the

plaintiffs had plausibly stated a claim that fell within the second exception to the doctrine of

consular nonreviewability because they alleged that their visa reapplications had been denied pursuant to the material support provision contained in § 1182(a)(3)(B)(iv)(VI)(dd) relating to Tier III organizations, which they claimed was "[t]he only plausible subclause in [§] 1182(a)(3)(B)" that could apply to them.  Compl. ¶ 69.  And, the plaintiffs have conceded that if such material support was allegedly provided to either a Tier I or Tier II organization, the notice they received would suffice under the statute.  See Plaintiffs' Response to Defendants' Motion to Dismiss at 22; Plaintiffs' Response to Defendants' Supplemental Brief in Support of Defendants' Motion to Dismiss at 13.  Indeed, at the January 5, 2023, hearing on the parties' discovery dispute, the Court noted that if the plaintiffs' denial was based on either Tier I or Tier II, the plaintiffs would have no statutory right to challenge the notice they received.  The Court went on to conclude that the plaintiffs were not entitled to further responses about the details of the inadmissibility decision because the defendants had provided notice that their inadmissibility was not based on Tier III.  See Order at 1 (Jan. 9, 2023), ECF No. 42.

Therefore, while the plaintiffs attempt to question the details and precise timeline of their inadmissibility decisions, the Court reiterates its prior ruling that Congress has not required that the defendants provide any notice unless an individual is denied on the basis of a Tier III organization.  And, because the defendants have now advised the plaintiffs that a Tier III organization was not the basis for the denials, the plaintiffs' challenge to the notice they received is foreclosed by the consular nonreviewability doctrine because, at this stage of this case, it is clear that the consular decision does not fall within the second exception to this doctrine.  Accordingly, the Court must grant the defendants' motion for summary judgment on the plaintiffs' first, second, fourth, and fifth causes of action.

**B.      The Plaintiffs' Motion for Summary Declaratory Judgment**

Having determined that it must grant the defendants' motion for summary judgment, the

Court must now determine whether it may nonetheless grant the plaintiffs' requested declaratory

relief.  The plaintiffs contend that while the parties' remaining disputes over material facts

precludes the Court from entering summary judgment, the Court may nonetheless "implement

forward-looking relief and dispose of this case." Pls.' Reply at 1.  Specifically, the plaintiffs

request that the Court order that: (1) upon the plaintiffs' "reapplication for nonimmigrant visas, a

consular officer at the [ ] Department of State posted at the U.S. Embassy in Beirut, Lebanon,

shall make a determination as to whether [the p]laintiffs are admissible for entry to the United

States[,]" Proposed Declaratory Judgment Order at 1, ECF No. 44-1; (2) "if the adjudicating

consular officer determines that either of the [p]laintiffs have engaged in suspected terrorist

activity, the officer shall identify the subsection of INA [§] 212(a)(3)(B) that provides the ground

of exclusion and record the finding in the Consular Consolidated Database[,]" id. (citing Am.

Acad. of Religion, 573 F.3d at 126); (3) if the basis for such a determination is 8 U.S.C.

§1182(a)(3)(B)(iv)(VI)(dd)—i.e., suspected material support to a "Tier III" organization—the

officer must provide them notice of the allegation by "providing the name of the person or

organization that [they] are suspected of having supported," id., and an "opportunity 'to

demonstrate by clear and convincing evidence that the actor did not know, and should not

reasonably have known, that the organization was a terrorist organization[,]'" id. at 2 (quoting 8

U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd)); (4) "that such notice and opportunity must be given to [the

p]laintiffs before the consular officer makes a final determination as to whether to grant or deny

[the p]laintiffs' visa applications[,]" id. (citing Am. Acad. of Religion, 573 F.3d at 131–32); and

(5) "that only upon [the p]laintiffs' failure to provide evidence showing that they did not know,

and should not reasonably have known, that the material support they provided was to a terrorist

organization, may the consular officer enter a final finding of inadmissibility and on that basis

deny [the p]laintiffs' visa applications[,]" id.  At bottom, the plaintiffs argue that their request

"merely seek[s] what this Court has explicitly found the law to require—notice and an

opportunity to be heard if the government declares that [the p]laintiffs provided support for a

'Tier III' terrorist organization when they apply for new visas in the future."  Pls.' Reply at 2.

As indicated above, the Declaratory Judgment Act does not provide an independent basis

for jurisdiction or a distinct cause of action.  See C&E Servs., Inc. of Wash., 310 F.3d at 201.

Therefore, "just like suits for every other type of remedy, declaratory-judgment actions must

satisfy Article III's case-or-controversy requirement."  California, 593 U.S. at 672 (citing

MedImmune, 549 U.S. at 126–27).  Thus, in order for the Court to grant the plaintiffs' motion

for summary declaratory judgment, their dispute must be "definite and concrete, touching the

legal relations of parties having adverse legal interests[,]" and it must also be "'real and

substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as

distinguished from an opinion advising what the law would be upon a hypothetical state of

facts.'"  MedImmune, 549 U.S. at 127 (quoting Aetna Life Ins., 300 U.S. at 240–41).

Although the plaintiffs contend that their requested declaratory relief is merely a

restatement of what the Court has already found, such relief is predicated on "a hypothetical state

of facts[,]" id. (quoting Aetna Life Ins., 300 U.S. at 240–41), i.e., a scenario in which the

plaintiffs apply for a visa in the future and are not only denied a visa, but their denials are also

based on a determination of suspected material support to a Tier III organization, see Pls.' Mot.

at 13.  And, "[t]ypically, a declaratory judgment claim based on the occurrence of a future or

contingent event is not sufficiently immediate or real to be justiciable[,]" C.F. Folks, Ltd., 308 F.

Supp. 3d at 150 (citing Nat'l R.R. Passenger Corp., 670 F. Supp. at 429), unless "there is a

'practical likelihood' that the future or contingent event will occur, a declaratory judgment claim may nonetheless present a justiciable controversy[,]" id. (quoting Bazarian Int'l Fin. Assocs. L.L.C., 793 F. Supp. 2d at 129).

Here, however, the Court has granted the defendants' motion for summary judgment because the defendants denied the plaintiffs' visa applications on Tier I or Tier II terrorist-related grounds, not on Tier III grounds.  In the absence of anything in the record suggesting that the plaintiffs may in the future be denied based on Tier III grounds, the Court cannot conclude that "there is a 'practical likelihood[,]'" id., that the plaintiffs will be denied on the basis of Tier III terrorist-related grounds—as opposed to either Tier I or Tier II terrorist-related grounds—in response to any future visa application process.  Therefore, the Court concludes that there is no longer a live controversy capable of sustaining this action, as is required for the Court to grant the plaintiffs the declaratory relief they seek.  See California, 593 U.S. at 672 (citing MedImmune, 549 U.S. at 126–27).[9]  Accordingly, the Court must deny the plaintiffs' motion for summary declaratory judgment.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the defendants' motion for summary judgment and deny the plaintiffs' motion for summary declaratory judgment.

---

[9] The plaintiffs, in a notice of supplemental authority, argue that under the District of Columbia Circuit's recent decision in Pietersen, "the consular nonreviewability doctrine does not foreclose aggrieved parties from seeking a declaration as to the proper, future application of legislative guidance."  Notice of Supplemental Authority at 1, ECF No. 51.  In Pietersen, the D.C. Circuit held that the plaintiffs' claim under the Administrative Procedure Act was not foreclosed by the consular nonreviewability doctrine because "it is well settled that when plaintiffs pursue forward-looking challenges to the lawfulness of regulations or policies governing consular decisions, courts may review them 'to assure that the executive departments abide by the legislatively mandated procedures.'"  138 F. 4th at 560 (quoting Int'l Union of Bricklayers & Allied Craftsmen v. Meese, 761 F.2d 798, 801 (D.C. Cir. 1985)).  However, Pietersen dealt explicitly with a challenge to the lawfulness of a State Department policy, not a challenge to a particular visa determination by a consular officer.  See id.  In any event, Pietersen does not disturb the controlling legal authority relating to the requirements for a declaratory judgment pursuant to the Declaratory Judgment Act, and is thus in apposite to the circumstances in this case.

**SO ORDERED** this 15th day of August, 2025.[10]

REGGIE B. WALTON
United States District Judge

---

[10] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.